NICHOLAS A. SICILIANO (CSBN 195026)
**LAW OFFICES OF NICHOLAS A. SICILIANO**
6320 Canoga Avenue, Suite 1400
Woodland Hills, California 91367
Tel: (818) 887-8895  *  Fax: (818) 887-8896

Attorneys for Plaintiff Michael DuRoss

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL DUROSS, an Individual, | CASE NO.: 2:17-cv07006-SJO-JPR |
| Plaintiff, | [LOS ANGELES COUNTY SUPERIOR COURT ACTION NO. BC670877] |
| -vs.- | **PLAINTIFF'S OPPOSITION TO DEFENDANT HOME DEPOT U.S.A., INC.'S NOTICE OF AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF** |
| HOME DEPOT U.S.A., INC., and DOES 1-25, Inclusive, | |
| Defendants. | |

[Filed concurrently with Plaintiff's Separate Statement in Opposition to Defendant's Motion for Summary Judgment; Plaintiff's Additional Material Facts; Plaintiff's Evidentiary Objections; and Plaintiff's Compendium of Evidence]

Date:   July 30, 2018
Time:   10:00 a.m.
Dept.:  10C, Hon. S. James Otero

Trial Date:  September 11, 2018

1

PLAINTIFF'S OPPOSITION TO DEFENDANT HOME DEPOT U.S.A., INC.'S NOTICE OF AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF

LAW OFFICES OF NICHOLAS A. SICILIANO
6320 CANOGA AVENUE, SUITE 1400
WOODLAND HILLS, CALIFORNIA 91367
Tel: (818) 887-8895 * Fax: (818) 887-8896

1  TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2      PLEASE TAKE NOTICE that Plaintiff Michael DuRoss ("Plaintiff")

3  respectfully submits his Memorandum of Points & Authorities in Support of

4  Plaintiff's Opposition to Defendant HOME DEPOT U.S.A., INC.' ("Home Depot")

5  Motion for Summary Judgment, or, in the Alternative, Motion for Partial Summary

6  Judgment, pursuant to Federal Rules of Civil Procedure, Rule 56(a) ("Motion").

7

8  DATED:      July 9, 2018        LAW OFFICES OF NICHOLAS A. SICILIANO

9

10                                    *NICHOLAS A. SICILIANO*

11                          By: _____

12                             NICHOLAS A. SICILIANO, ESQ.
                               Attorneys for Plaintiff
13                             MICHAEL DUROSS

LAW OFFICES OF NICHOLAS A. SICILIANO
6320 CANOGA AVENUE, SUITE 1400
WOODLAND HILLS, CALIFORNIA 91367
Tel: (818) 887-8895 * Fax: (818) 887-8896

# **TABLE OF CONTENTS**

I.   Introduction ......................................................................... 1

II.  Statement of Facts .............................................................. 1

III. Summary Judgment Standard ........................................... 6

IV.  Legal Argument .................................................................. 7

    A.   Defendant Is Not Entitled to Summary Judgment as to Plaintiff's Design and/or Manufacturing Defect Because These Claims Are Not Raised in the Motion. ...................................... 7

    B.   Triable Issues of Fact Remain as to Plaintiff's Negligence Causes of Action. ............................................................. 7

        1.   There is a Triable Issue of Fact Regarding the Negligence Claim ..................................................... 8

        2.   Plaintiff's Negligent Failure to Warn Claim is Meritorious ..... 10

        3.   There is a Triable Issue of Fact Regarding Causation ............ 11

    C.   Summary Judgment as to Plaintiff's Strict Liability – Failure to Warn" Claim is Improper. ............................................. 14

    D.   There is a Genuine Dispute of Material Fact as to Plaintiff's Implied Warranty Causes of Action ...................................... 16

    E.   There is a Genuine Dispute of Material Fact as to Plaintiff's Breach of Express Warranty Claim. ...................................... 18

    F.   Plaintiff Did Not Waive His Claims. ...................................... 19

V.   Conclusion ......................................................................... 21

LAW OFFICES OF NICHOLAS A. SICILIANO
6320 CANOGA AVENUE, SUITE 1400
WOODLAND HILLS, CALIFORNIA 91367
Tel: (818) 887-8895 * Fax: (818) 887-8896

i

PLAINTIFF'S OPPOSITION TO DEFENDANT HOME DEPOT U.S.A., INC.'S NOTICE OF AND
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR PARTIAL
SUMMARY JUDGMENT; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF

# TABLE OF AUTHORITIES

*Cases*:

*Altman v. HO Sports Co.*, 821 F. Supp.2d 1178 (E.D. Cal. 2011) .......................... 15

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242,

       106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ..................................... 6

*Anderson v. Owens-Corning Fiberglas,* 53 Cal.3d 987,

       810 P.2d 549, 281 Cal. Rptr. 528 (1991) ............................. 10, 14

*Auto. Indus. Pension Trust Fund v. Tractor Equip. Sales, Inc.,*

       73 F.Supp.3d 1173 (N.D. Cal. 2014) ................................... 6

*Bockrath v. Aldrich Chemical Co.,* 21 Cal.4th 71,

       980 P.2d 398, 86 Cal. Rptr. 2d 846 (1992) ........................... 12

*Banville v. Schmidt,* 37 Cal.App.3d 92 (1974) ............................... 11

*Benedek v. PLC Santa Monica*, 104 Cal.App.4th 1351 (2002) ........................ 20

*Buhler v. Alpha Beta*, 224 Cal.App.3d 739 (1990) ........................... 12

*Burnett v. Chimney Sweep, LLC*, 123 Cal.App.4th 1057 (2004) ........................ 19

*Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199 (2006) ........................ 19

*Campbell v. General Motors Corp.,* 32 Cal.3d 112,

       649 P.2d 224, 184 Cal. Rptr. 891 (1982) ........................... 12

*Cavers v. Cushman Motor Sales, Inc.,* 95 Cal.App.3d 338 (1979) ..................... 11

*Celli v. Sports Car Club, Inc.*, 29 Cal.App.3d 511 (1972) ........................... 19

*Chavez v. Glock, Inc.,* 207 Cal.App.4th 1283 (2012) ........................... 14

*Cintrone v. Hertz*, 45 N.J. 434 (1965) .................................. 16, 17

LAW OFFICES OF NICHOLAS A. SICILIANO
6320 CANOGA AVENUE, SUITE 1400
WOODLAND HILLS, CALIFORNIA 91367
Tel: (818) 887-8895 * Fax: (818) 887-8896

PLAINTIFF'S OPPOSITION TO DEFENDANT HOME DEPOT U.S.A., INC.'S NOTICE OF AND
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR PARTIAL
SUMMARY JUDGMENT; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF

*Cronin v. J.B.E. Olson Corp.*, 8 Cal.3d 121,

    501 P.2d 1153, 104 Cal. Rptr. 433 (1972) …………….………………………… 11

*D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998) …………………… 7

*Dagher v. Ford Motor Company*, 238 Cal.App.4th 905 (2015) ……..…………… 17

*Ferrell v. Southern Nevada Off-Road Enthusiasts, Ltd.*,

    147 Cal.App.3d 309 (1983) …………………………….....………… 19, 20

*Finn v. G.D. Searle & Co.,* 35 Cal.3d 691,

    677 P.2d 1147, 200 Cal. Rptr. 870 (1984) ………………………………… 14, 15

*First National Bank of Arizona v. Cities Service Co.* (1968) 391 U.S. 253,

    [88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968) …………………………….…….. 6, 7

*Hauter v. Zogarts*, 14 Cal.3d 104,

    534 P.2d 377, 120 Cal. Rptr. 681 (1975) ………………………………… 18

*Hennigan v. White*, 199 Cal.App.4th 395 (2011) ………………………………… 12

*Holmes Packaging Machinery Corp. v. Bingham*,

    252 Cal. App. 2d 862 (1967) ……………………….…………………… 17

*Hufft v. Horowitz*, 4 Cal.App.4th 8 (1992) ………………………………………… 11

*Huynh v. Ingersoll-Rand,* 16 Cal.App.4th 825 (1993) …………………………… 11, 15

*Irwin v. Pacific Southwest Airlines*, 133 Cal.App.3d 709 (1982) ……….………... 13

*Jackson v. Deft, Inc.*, 223 Cal.App.3d 1305 (1990) ……………………………… 15

*Jiminez v. Sears, Roebuck & Co.*, 4 Cal.3d 379,

    482 P.2d 681, 93 Cal. Rptr. 769 (1971) ………………………………… 13

*Keith v. Buchanan*, 173 Cal.App.3d 13 (1985) ………………………………… 16

*McNeal v. Greenberg*, 40 Cal.2d 740 (1953) ………………………………… 8, 9, 16

LAW OFFICES OF NICHOLAS A. SICILIANO
6320 CANOGA AVENUE, SUITE 1400
WOODLAND HILLS, CALIFORNIA 91367
Tel: (818) 887-8895 * Fax: (818) 887-8896

*Mitchell v. Gonzales,* 54 Cal.3d 1041,

    819 P.2d 872, 1 Cal. Rptr. 2d 913 (1991) ............................................ 12

*Mitus v. Pfizer, Inc.*, 358 F.3d. 659 (9th Cir. 2004) ................................... 15

*Morgan v. Stubblefield*, 6 Cal.3d 606,

    493 P.2d 465, 100 Cal. Rptr. 1 (1972) ............................................... 17

*Neale v. Atchison T. & S. F. Ry. Co.,* 178 Cal. 225, 228 (1918) ................... 8

*Old Republic Ins. Co. v. FSR Brokerage*, 80 Cal.App.4th 666 (2000) .............. 20

*Olsen v. Breeze, Inc.*, 48 Cal.App.4th 608 (1996) ..................................... 20

*Ortega v. Kmart Corp.*, 26 Cal. 4th 1200,

    36 P.3d 11, 114 Cal. Rptr. 2d 470 (2001) ........................................ 8

*Paralift, Inc. v. Superior Court*, 23 Cal.App.4th 748 (1993) .......................... 20

*Price v. Shell Oil*, 2 Cal.3d 245,

    466 P.2d 722, 85 Cal. Rptr. 178 (1970) ..................................... 16, 20

*Renown, Inc. v. Hensel Phelps Construction Co.,* 154 Cal.App.3d 413 (1984) ....... 8

*Ringler Associates Inc. v. Maryland Casualty Co.,* 80 Cal.App.4th 1165

    (2000) ..................................................................... 20

*Schwoerer v. Union Oil Co.,* 14 Cal.App.4th 103 (1993) ........................... 11

*Sorensen v. Target Corp.*, 2013 U.S. Dist. LEXIS 173221, 19 (2013) ............... 8

*Souza v. Squaw Valley*, 138 Cal.App.4th 262 (2006) .................................. 12

*St. Agnes Medical Center v. PacifiCare of California*, 31 Cal.4th 1187

    82 P.3d 727, 8 Cal. Rptr. 3d 517 (2003) ......................................... 19

*Tierstein v. Licht*, 174 Cal.App.2d 835 (1959) ................................... 8, 16

LAW OFFICES OF NICHOLAS A. SICILIANO
6320 CANOGA AVENUE, SUITE 1400
WOODLAND HILLS, CALIFORNIA 91367
Tel: (818) 887-8895 * Fax: (818) 887-8896

iv

PLAINTIFF'S OPPOSITION TO DEFENDANT HOME DEPOT U.S.A., INC.'S NOTICE OF AND
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR PARTIAL
SUMMARY JUDGMENT; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF

*Tunkl v. Regents of University of California*, 60 Cal.2d 92,

    383 P.2d 441, 32 Cal.Rptr. 33 (1963) ………………………..…………... 19

*Waldridge v. American Hoechst Corp.*, 24 F.3d 918 (7th Cir. 1994) ……………... 6

*Westlye v. Look Sports, Inc.*, 17 Cal.App.4th 1715 (1993) ……………… 19, 20


**Statutes:**

*California Civil Code* § 1550 ……………………………………….…... 19

*California Civil Code* § 1558 ……………………………………….…... 19

*California Civil Code* § 1565 ……………………………………….…... 19

*California Civil Code* § 1580 ………………………………..……….…... 19

*California Civil Code* §1955 ……………………………………………... 17

*California Commercial Code* §2315 …………………………………... 16

*Federal Rules of Civil Procedure* 56 …………………………………………... 7

*Federal Rules of Civil Procedure* 56, subd. (a) ……………………………... 7


**Other Authority:**

CACI 1200 …………………………………………………………………... 7

CACI 1224 …………………………………………………………………... 8

CACI 1230 ………………………………………………..……………... 18

CACI 1231 …………………………………………………..……………... 16

Restatement Second of Torts, § 388, comment (c) ……………………………... 7

6 Witkin, Summary of Calif. Law (10th ed. 2005) Torts, § 1467 …………..………... 14

LAW OFFICES OF NICHOLAS A. SICILIANO
6320 CANOGA AVENUE, SUITE 1400
WOODLAND HILLS, CALIFORNIA 91367
Tel: (818) 887-8895 * Fax: (818) 887-8896

v

PLAINTIFF'S OPPOSITION TO DEFENDANT HOME DEPOT U.S.A., INC.'S NOTICE OF AND
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR PARTIAL
SUMMARY JUDGMENT; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF

LAW OFFICES OF NICHOLAS A. SICILIANO
6320 CANOGA AVENUE, SUITE 1400
WOODLAND HILLS, CALIFORNIA 91367
Tel: (818) 887-8895 * Fax: (818) 887-8896

# MEMORANDUM OF POINTS & AUTHORITIES

## I.    INTRODUCTION

On August 23, 2015, Plaintiff Michael DuRoss suffered a catastrophic back injury when the tailgate on the rented Home Depot "Load N Go" truck ("Truck") he was using collapsed without warning, sending him violently to the ground.  Plaintiff suffered a burst fracture of his vertebra and spent months in rehabilitation, unable to work, and forced to wear an upper body apparatus all day, every day, while the fracture healed. Plaintiff still suffers from significant discomfort and will require corrective surgery.

The issues in this negligence and products liability case are fact driven with numerous disputes on both sides such that the imposition of summary judgment or partial summary judgment is wholly improper.  Why did the tailgate on the Truck fail?  Were adequate warnings provided?  Were adequate inspections/maintenance performed?  Was the truck fit for its intended purpose?  Triable issues of fact remain as to these inquiries.

Home Depot's incredulous position can be summed up as follows: we have no evidence of an inspection of the Truck on August 23, 2015, but since we have a policy to inspect, it must have happened.  Similarly, Home Depot contends that since it has no documents concerning the product failure, and it documents all product failures, then the product failure could not have happened.  To accept Defendant's strained position requires this Court to conclude that the Plaintiff, step-sister Kristina Massaro, and father Dr. Joseph DuRoss, are all lying.  Home Depot's position is wholly without merit.

## II.    STATEMENT OF FACTS[1]

On August 23, 2015, Kristina Massaro rented a Load N Go truck from the Home Depot store in Torrance (the "Truck"). Home Depot, a non-California entity, owns a fleet of Load N Go trucks that it rents to consumers in California and elsewhere.  TAFCO Equipment Company, manufactures the Load N Go portion of the trucks.

---

[1] For the Court's convenience, all facts asserted herein are supported verbatim by Defendants' Separate Statement Of Undisputed Material Facts In Support Of Motion For Summary Adjudication, filed concurrently herewith, and will not be directly cited herein.

LAW OFFICES OF NICHOLAS A. SICILIANO
6320 CANOGA AVENUE, SUITE 1400
WOODLAND HILLS, CALIFORNIA 91367
Tel: (818) 887-8895 * Fax: (818) 887-8896

The failure of the tailgate cable assembly is an accident that ordinarily does not occur. The tailgate cable assembly, when adequately inspected and maintained should not fail or become disengaged.  The cursory inspections by Home Depot, assuming they actually took place, were insufficient to reveal an imminent failure. Home Depot's maintenance on the Truck, assuming it actually took place, was also insufficient.

Home Depot was aware of the risks associated with standing on the tailgate. Home Depot did not warn or instruct Kristina and Plaintiff to not stand on the tailgate or of any risk associated with the tailgate.

At the time the tailgate collapsed, Plaintiff was using the Truck in a foreseeable and reasonable manner. On August 23, 2015, Michael DuRoss was assisting his step-sister (Kristina Massaro) and his father (Dr. Joseph DuRoss) move personal items belonging to Kristina from a location in Torrance to Tustin, California. Kristina rented a Load N Go truck from Home Depot in Torrance to move the items. The Truck and its tailgate cable assembly did not perform as Plaintiff expected at the time it was being used. The Truck and its tailgate assembly was not safe for Plaintiff to place his foot on.

Kristina arrived at the Home Depot store approximately 30 minutes prior to the store opening to ensure that she would be one of the first customers in line to be able to rent a truck. This Home Depot had two Load N Go trucks in its inventory on August 23, 2015. Kristina testified that as she waited in the parking lot, she did not see any Home Depot personnel conduct any inspection of either of the trucks.

Home Depot employee Yazbek Orozco was the employee who rented the Truck to Kristina the day of the incident.  As the opening sales associate charged with the truck rentals that morning, based on her personal policy, Ms. Orozco would have arrived about 10 minutes prior to the store opening, well after Kristina arrived.

Kristina was at the store for approximately 10 minutes and in that time discussed the purpose of the rental with the associate.  The associate, pursuant to store policy, confirmed that the truck was of a character sufficient for the stated purpose of moving (her furnishings). Kristina also informed the associate that she would be helped with her

LAW OFFICES OF NICHOLAS A. SICILIANO
6320 CANOGA AVENUE, SUITE 1400
WOODLAND HILLS, CALIFORNIA 91367
Tel: (818) 887-8895 * Fax: (818) 887-8896

1    move, which is why Kristina could not take the original truck suggested by the store

2    associate as it had a defective seatbelt.  In addition to the truck rented to Kristina, the

3    truck with the defective seatbelt was rented to another customer, despite its defect.

4        Home Depot Load N Go trucks use a cabling system to support an open tailgate.

5    The original versions of the trucks did not include a cabling system, but after several

6    years, Home Depot (and/or its agent, PHH) requested that a system be added to the trucks

7    to allow the tailgate to lay flat when open so that larger materials could extend beyond

8    the length of the bed itself.  Prior to, the tailgate would completely open and cover the

9    tail/brake lights of the truck while in transit, leading to complaints by customers.

10       Home Depot contends that it has a practice of inspecting all vehicles every day,

11   in the morning and in the evening, and each time before they are rented, and when

12   returned.  Home Depot's policy is to only inspect the trucks once a month.  All daily and

13   weekly inspection sheets over one month old have been purged.

14       Home Depot does not know the functions of the tailgate cable assembly.  Home

15   Depot does not know the load capacity of the tailgate when it is in its down position.

16   Home Depot personnel are not familiar with its vehicles.  Any inspection of the tailgate

17   and tailgate cable assembly would have consisted of just looking at the assembly and

18   possibly giving the cable a little pull or tug.  Home Depot does not load test the tailgate

19   or tailgate cable assembly. Home Depot personnel testified they were not sufficiently

20   knowledgeable or trained in order to properly inspect the tailgate cable assembly.

21   Adequate inspections by trained personnel would have revealed the compromised

22   cabling system on the Truck.

23       No inspection was performed on the subject truck on August 23, 2015, prior to

24   Kristina taking possession, and Home Depot has produced no documents to the contrary.

25   The Monthly Inspection Sheet completed by Yazbek Orozco dated August 1, 2015, is

26   not for the Truck. There is not a single Home Depot employee with personal knowledge

27   of the condition of the Truck on August 23, 2015.

28       The tailgate cabling system consists of an upper and lower cable connected by a

3

LAW OFFICES OF NICHOLAS A. SICILIANO
6320 CANOGA AVENUE, SUITE 1400
WOODLAND HILLS, CALIFORNIA 91367
Tel: (818) 887-8895 * Fax: (818) 887-8896

1   carabiner.   The cables consist of galvanized wire rope, looped at the ends by use of

2   aluminum ferrules.   The upper cable is connected to the side gate of the bed with an eye-

3   bolt, which may or may not be a fully closed eye-bolt. The lower cable is connected to

4   the tailgate via a metal bracket.   All of the component parts are "off the shelf" products,

5   and are all available for purchase from Home Depot. Home Depot has purchased

6   numerous replacement tailgate cable assemblies over the years from TAFCO.

7        Home Depot does not provide any verbal or written warning or instructions

8   concerning the use of the tailgate.   There are no documents at Home Depot that discuss

9   any warning or instructions with respect to the tailgate.   No warnings or instructions

10  were given to Kristina concerning the tailgate or use of the tailgate. There are decals on

11  the tailgate reminding customers to latch the tailgate shut when it is in its upright

12  position.   There is a decal from the manufacturer, TAFCO Equipment Company, that is

13  to be placed on the tailgate and reads, "Do Not Load Heavy Material On Tailgate".

14  There was no decal on the Home Depot truck as to the use or load capacity of the tailgate.

15        The decal "No Passengers Allowed in Bed" is understood to mean that the driver

16  cannot allow persons to ride in the open flatbed while it is in transit.   The provision of

17  the Vehicle Delivery Agreement which provides "Passengers Are Not Permitted In The

18  Cargo Area" is understood to mean the same thing.

19        Michael, Kristina, and Dr. DuRoss were in the process of unloading items from

20  the bed of the truck, when Michael stepped onto the open tailgate and it collapsed

21  underneath him, causing him to violently hit the ground.   According to Dr. DuRoss, both

22  the driver's side and passenger side cables broke when Michael stepped onto the tailgate.

23  At least as to the cable on the passenger side, it looked like it had slipped out of the metal

24  pieces that secured the looped portion of the cable.   Prior to the accident, while in the

25  possession of Kristina, the Truck was not improperly handled nor its condition changed.

26        Given the existence of the tailgate cable assembly, Plaintiff expected that the

27  Truck was in a condition to allow for him to step on the tailgate.   The Truck, and more

28  specifically, the tailgate, did not perform as Plaintiff anticipated.

LAW OFFICES OF NICHOLAS A. SICILIANO
6320 CANOGA AVENUE, SUITE 1400
WOODLAND HILLS, CALIFORNIA 91367
Tel: (818) 887-8895 * Fax: (818) 887-8896

Dr. DuRoss returned the Truck to Home Depot shortly after Michael's fall, and reported to the Home Depot personnel that there was a problem with the tailgate, that his son had fallen and he was rushing him over to the hospital for evaluation. Home Depot did not make a report of the incident on the date the Truck was returned, nor did it inspect the truck prior to closing out the transaction for Dr. DuRoss.

Home Depot did no investigation of the Truck for at least six (6) days after the incident, and only took some action then because Dr. DuRoss returned to the Home Depot to speak with a manager about the incident. Dr. Duross submitted a formal written statement of the events of August 23, 2015.

In response, Home Depot claims that store manager Cynthia Carreiro inspected the truck and despite concluding that there was "nothing wrong" with the cables, Ms. Carreiro tagged the truck out of service as of September 1, 2015, which, per company policy, only happens when a truck has a mechanical problem.

Thereafter, on September 11, 2015, Michael was contacted by a representative from Home Depot and gave a statement of the events that took place, wherein he expressed that he was going to consult with an attorney, and Home Depot should, at least, help pay for his medical expenses. Home Depot did not do so, and then sold the subject truck early the following year, after Michael had made his complaint.

On September 13, 2015, over three weeks after the accident, Ms. Carreiro took (legible) photographs of the truck's condition (as of September 13, 2015).

Home Depot employees are charged with maintenance of the trucks and have access to the parts to repair or replace the tailgate cable assembly parts. While Home Depot may use a third-party to perform preventative maintenance such as oil changes and tire rotations, it does not include the tailgate cable assembly. Home Depot has no knowledge of any scheduled maintenance on the tailgate or tailgate cable assembly.

Home Depot has not produced any actual records that show any maintenance was performed on the tailgate or tailgate cable assembly of the subject Truck in the over four (4) plus years the Truck was in service prior to the subject incident. At the time Dr.

DuRoss reported the incident, Home Depot had, but later purged, all daily inspection sheets, weekly inspection sheets, and work orders, invoices and/or service records for the maintenance that was "performed".

Plaintiff was not a signatory to any Home Depot agreement, was never presented with any agreement, and never intended to waive any rights afforded to him as to claims against Home Depot.

## II.   SUMMARY JUDGMENT STANDARD

Once the moving party demonstrates the absence of a genuine issue of material fact as to an essential element of the nonmoving party's claim, the burden shifts to the nonmoving party to identify specific evidence showing there is a genuine issue of material fact for trial." (*Auto. Indus. Pension Trust Fund v. Tractor Equip. Sales, Inc.*, 73 F.Supp.3d 1173, 1179 (N.D. Cal. 2014).)

The judge's function in ruling on a summary judgment is not to weigh the evidence and determine the truth of the matter, but only to determine whether there is a genuine issue for trial. (*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).) Any inferences drawn from the facts presented must be viewed in the light most favorable to the opposing party. (*Id.* at 255.) "[T]he non-movant need not … persuade the court that her case is convincing, she need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." (*Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994).)

A fact is material if it could affect the outcome. (*Anderson*, 477 U.S. 248.) A dispute is genuine if a reasonable jury could rule in favor of the nonmoving party based on the evidence presented. (*Id.*). The facts need not be resolved in favor of the opposing party, only that they "require[s] a jury or judge to resolve the parties' differing versions of the truth at trial." (*First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288-89, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968).) Summary judgment is only appropriate "when no rational jury could find in favor of the non-moving party." (*D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).)

LAW OFFICES OF NICHOLAS A. SICILIANO
6320 CANOGA AVENUE, SUITE 1400
WOODLAND HILLS, CALIFORNIA 91367
Tel: (818) 887-8895 * Fax: (818) 887-8896

LAW OFFICES OF NICHOLAS A. SICILIANO
6320 CANOGA AVENUE, SUITE 1400
WOODLAND HILLS, CALIFORNIA 91367
Tel: (818) 887-8895 * Fax: (818) 887-8896

## III.   LEGAL ARGUMENT

### A. DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT AS TO PLAINTIFF'S DESIGN AND/OR MANUFACTURING DEFECT BECAUSE THESE CLAIMS ARE NOT RAISED IN THE MOTION.

It is well-settled that, "[A] party may move for summary judgment, <u>identifying each claim or defense - or the part of each claim or defense—on which summary judgment is sought</u>...." (F.R.C.P. 56(a) (emphasis added).)   Here, while addressing Plaintiff's other claims in its Notice and Motion, Defendant fails to provide any notice or address Plaintiff's Second Cause of Action for "Strict Liability – Manufacturing Defect" and Third Cause of Action for  "Strict Liability – Design Defect." (Def. Ex. A at 4:17-6:3.)  Defendant's moving papers contain no notice or argument regarding these causes of action.  Accordingly, Defendant failed to meet its burden of "demonstrating the absence of a genuine issue of material fact as to an essential element of the nonmoving party's claim, and summary judgment should be denied. (F.R.C.P. 56.)

### B.   TRIABLE ISSUES OF FACT REMAIN AS TO PLAINTIFF'S NEGLIGENCE CAUSES OF ACTION.

Plaintiff's negligence claim in the present case is a claim for failure to properly inspect and/or maintain the subject vehicle, and by doing so, negligently supplying the Truck to Kristina (and Plaintiff).  CACI 1200 provides the essential elements for a negligence claim against Defendant, who is alleged to have negligently supplied, installed, inspected, repaired, or rented the subject product. (CACI 1200; Restatement Second of Torts, section 388, comment (c), provides: "These rules. . . apply to . . . lessors . . . [and] to all kinds of bailors. . . .".)

Similarly, pursuant to CACI 1224, Negligence for Product Rental/Standard of Care, a person who rents products to others for money is negligent if he or she fails to use reasonable care to: (1) inspect the products for defects; (2) make them safe for their intended use; and (3) adequately warn of any known dangers. (CACI 1224.)

Across the spectrum of civil cases involving adequate maintenance or inspection,

7

what constitutes reasonableness is generally a question of fact. What constitutes a reasonable inspection "is a matter to be determined from the totality of circumstances of the particular case[ ]" and "must vary with the nature of the thing to be inspected and the nature and gravity of the harm which is sought to be averted." (*Neale v. Atchison T. & S. F. Ry. Co.,* 178 Cal. 225, 228 (1918); *Ortega v. Kmart Corp.,* 26 Cal. 4th 1200, 1214, (2001); *Renown, Inc. v. Hensel Phelps Construction Co.,* 154 Cal.App.3d 413, 420 (1984); *Sorensen v. Target Corp.,* 2013 U.S. Dist. LEXIS 173221, 19 (2013).)

## A. There Is a Triable Issue of Fact Regarding The Negligence Claim.

When renting products, a lessor has a duty to both the lessee and third persons to use reasonable care to make an examination of the good before lending it "in order to make certain that it was fit for the use known to be intended." (*Tierstein v. Licht*, 174 Cal.App.2d 835, 840-841 (1959).)  Under either a negligence or an implied warranty theory, "the essential inquiry … is whether [the defendants] made such inspection of their equipment as was necessary to discharge their duty of reasonable care." (*McNeal v. Greenberg*, 40 Cal.2d 740, 742 (1953).)

In *Tierstein*, there was evidence at trial that a metal "tie loop," which was used to assist in securing a horse inside a horse trailer, was defective because it was poorly welded to the trailer, was corroded with rust, and that was why the "tie loop" broke. The court reversed a directed verdict <u>at trial</u> for the defendant, holding that a jury could find that the bailor negligently created the defect, and/or negligently failed to inspect and discover the defect before bailing the product.

In *McNeal, supra,* the plaintiff rented a tractor, drove the tractor to a work site, and performed leveling work throughout the day.  The next day, plaintiff started operations on a different part of the lot, and after only a few passes, the brakes on the tractor failed, and it went over the edge of an embankment. (*McNeal*, 40 Cal.2d at 743.) The appellate court reversed a directed verdict, finding there was sufficient basis for an inference that the brakes were defective at the time the tractor was rented to the plaintiff, despite the fact that the plaintiff used the tractor extensively before the accident. (*Id.* at

LAW OFFICES OF NICHOLAS A. SICILIANO
6320 CANOGA AVENUE, SUITE 1400
WOODLAND HILLS, CALIFORNIA 91367
Tel: (818) 887-8895 * Fax: (818) 887-8896

LAW OFFICES OF NICHOLAS A. SICILIANO
6320 CANOGA AVENUE, SUITE 1400
WOODLAND HILLS, CALIFORNIA 91367
Tel: (818) 887-8895 * Fax: (818) 887-8896

744.) Regarding the need for a proper inspection before renting goods, the court stated:

> "The fact that a chattel is leased for immediate use makes it unreasonable for the lessor to expect that the lessee will do more than give it the most cursory of inspections. The lessor must, therefore, realize that the safe use of the chattel can be secured only by precautions taken by him before turning it over to the lessee." (*Id.* at 742.)

Here, the facts in these cases are very similar to those in the present case, in that although Defendant contends it "inspected" the Truck immediately before it was rented to Plaintiff's sister and found no defect, the evidence does not support this contention. Further, as in *McNeal, supra,* where the incident did not take place immediately after the rental, although Plaintiff and his family used the Truck for a couple of hours before the tailgate failed, there is sufficient evidence to infer that the cables and/or tailgate were defective at the time of the rental of the Truck.

Here, the evidence presented by Plaintiff shows that Defendant did not inspect the Truck prior to renting to it Plaintiff's sister the day of the incident. Additionally, while trumpeting a "policy to perform inspections", Defendant presented no evidence that the policy was followed and such inspections actually took place at any time prior to, or after the incident.

Defendant produced as single document purportedly showing the Truck was inspected on August 1, 2015, approximately two weeks before the incident, but its own employee testified that the single document does not show which of its trucks the document applied to.[2] Therefore, the document, and any testimony related thereto, is unreliable and irrelevant, at best.

Finally, while Ms. Carreiro testified that Defendant's employees "inspected"[3] the

---

[2] Even with knowledge of Plaintiff's incident, Defendant purged all alleged inspection/maintenance records.

[3] Defendant presented the declaration of 30(b)(6) witness Bryan Partridge, stating it used a third-party vendor for truck inspections/maintenance/repairs, including on July 30, 2015. However, the declarant testified that he has no idea of whether any actual

9

LAW OFFICES OF NICHOLAS A. SICILIANO
6320 CANOGA AVENUE, SUITE 1400
WOODLAND HILLS, CALIFORNIA 91367
Tel: (818) 887-8895 * Fax: (818) 887-8896

1    cables on the tailgates of the trucks before renting them, these "inspections" were

2    insufficient and inadequate to reveal an imminent failure. (See Stevick Declaration at ¶¶

3    7.a, 7.c., 8.)  Based on the above, there is at least a triable issue of fact regarding whether

4    Defendant adequately inspected the Truck before renting it to Kristina.  Thus, summary

5    judgment should be denied.

6                    **2.  Plaintiff's Negligent Failure to Warn Claim Is Meritorious.**

7           "Negligence law in a failure-to-warn case requires a plaintiff to prove that a

8    ...distributor did not warn of a particular risk for reasons which fell below the acceptable

9    standard of care, i.e., what a reasonably prudent [distributor] would have known and

10   warned about." (*Anderson v. Owens-Corning Fiberglas,* 53 Cal.3d 987, 1002 (1991).)

11          As to whether there were known risks related to the Truck, and specifically the

12   tailgate, Plaintiff has presented evidence that such risks did exist, and Defendant failed

13   to warn of them.  Specifically, according to the manufacturer, TAFCO, there was a

14   warning decal intended to be placed on or near the tailgate, warning people not to place

15   a heavy load on the tailgate.  If the manufacturer did not believe there was a risk of injury

16   from people standing on, and falling off, the tailgate, it would not have created and

17   included such a warning.  This is a reasonably foreseeable risk, as it is foreseeable that

18   people loading and/or unloading the Truck would stand on the tailgate to make such

19   loading easier.  Despite this known risk, and the availability of the warning provided to

20   Defendant, that warning was not present on the Truck at the time of the incident.  This

21   is inconsistent with the actions of a "reasonably prudent" lessor of goods.

22          In its Motion, Defendant ignores the existence and availability of the tailgate

23   warning sticker, arguing that the warnings on the Truck were adequate, and it "was not

24   required to warn of every specific possible risk." (Motion, p. 15.)  However, whether

25   warnings are adequate is ordinarily an *issue of fact* for the factfinder. (*Huynh v.*

26

27   inspections (or maintenance) took place, nor is his declaration based on admissible

28   evidence. (See Plaintiff's Opposition to Separate Statement at Nos. 53-62; see also,
     Evidentiary Objections filed concurrently at pp. 2-7, 12-16.)

LAW OFFICES OF NICHOLAS A. SICILIANO
6320 CANOGA AVENUE, SUITE 1400
WOODLAND HILLS, CALIFORNIA 91367
Tel: (818) 887-8895 * Fax: (818) 887-8896

*Ingersoll-Rand,* 16 Cal.App.4th 825, 835 (1993); *Schwoerer v. Union Oil Co.,* 14 Cal.App.4th 103, 111 (1993); *Hufft v. Horowitz,* 4 Cal.App.4th 8, 21 (1992); *Cavers v. Cushman Motor Sales, Inc.,* 95 Cal.App.3d 338, 347-348 (1979).) This is especially true here, where the evidence as to the warnings provided is in conflict.

Additionally, Defendant knowingly admits that a danger associated with standing on the open tailgate is that it could collapse yet did not provide any warning.[4] Over the years, Home Depot had purchased numerous replacement cable assemblies, which parts are only ordered if they have failed. Under these circumstances, a triable issues of material fact remain as to whether the warnings given by Defendant met its duty of care.

### 3. There Is a Triable Issue of Fact Regarding Causation.

Questions of causation are jury questions for the trier of fact. (*Banville v. Schmidt,* 37 Cal.App.3d 92, 107 (1974).) Only where one conclusion, and one conclusion only, may reasonably be drawn from the facts that the question becomes one of law. (*Id.*) In product liability actions, the plaintiff may establish causation by demonstrating that an alleged malfunction of the product, <u>or</u> that the absence of adequate warnings or directions, was the cause of the injury (*Cronin v. J.B.E. Olson Corp.*, 8 Cal.3d 121, 124 (1972), *Cavers, supra,* 95 Cal.App.3d at 342.)

A plaintiff may also establish legal cause by showing that the defendant's negligent act was a "substantial factor" in bringing about plaintiff's injury and there is no rule of law relieving the actor from liability. (*Mitchell v. Gonzales,* 54 Cal.3d 1041, 819 P.2d 872, 1 Cal. Rptr. 2d 913 (1991).) "The substantial factor standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical...." (*Bockrath v. Aldrich Chemical Co.,* 21 Cal.4th 71, 79 (1992).) Additionally, causation may be established by circumstantial evidence. In *Campbell v. General Motors Corp.,* 32 Cal.3d 112 (1982), the California Supreme Court

---

[4] Defendant's contention that the "No Passengers In Bed" and "Passengers are Not Permitted In the Cargo Area" means that users cannot step into the bed for loading and unloading strains credulity in light of the Vehicle Code (and common sense).

LAW OFFICES OF NICHOLAS A. SICILIANO
6320 CANOGA AVENUE, SUITE 1400
WOODLAND HILLS, CALIFORNIA 91367
Tel: (818) 887-8895 * Fax: (818) 887-8896

explained that a plaintiff:

> "need only show that the material fact to be proved may logically and reasonably be inferred from the circumstantial evidence.....[T]o take the case from the jury simply because the plaintiff could not prove to a certainty that the device would have prevented the accident would enable the manufacturer to prevail on the basis of its failure to provide the safeguard.... Such a rule would provide a disincentive to improve the safety features of a product and thereby interfere with one of the major policy goals of strict liability...." (*Id.* at 122.)

In the present case, Defendant erroneously claims Plaintiff cannot establish causation because he has not been able to identify a product defect or that Defendant did anything wrong to cause the incident.[5] (Motion, p. 12.)  This statement is simply untrue. In fact, Plaintiff has presented evidence that: (1) Defendant did not inspect the Truck before renting it the day of the incident, contrary to Defendant's policy; (2) Defendant failed to warn of the dangers of standing on the tailgate while loading the Truck, despite being provided with a sticker for the Truck warning against that precise risk and admitting to known risks; (3) any inspection and/or maintenance that was performed was insufficient; and (4) the tailgate would not have disengaged, causing Plaintiff to fall and

---

[5] *Hennigan v. White*, 199 Cal.App.4th 395 (2011), *Souza v. Squaw Valley*, 138 Cal.App.4th 262 (2006), and *Buhler v. Alpha Beta*, 224 Cal.App.3d 739 (1990), are miscited or inapplicable.  In *Souza,* unlike here, the plaintiff never used the alleged defective product -- the claim at issue there was strict products liability not negligence; in *Hennigan*, plaintiff's expert could not point to any problem with the product, whereas here, there is evidence of a defect, failure to properly inspect, and failure to adequately warn; and in *Buhler*, the court found only that negligent failure to warn is logically and legally inconsistent with the jury's finding on plaintiffs' strict products liability failure to warn.  Defendant also attempts to shift the blame to Plaintiff for his injuries, but "[c]omparing the relative fault of plaintiff and defendants is a question of fact that must be resolved by a trier of fact and cannot be resolved by way of a summary judgment motion." (*Sanchez v. Hillerich & Bradsby Co.*, 104 Cal.App.4th 703, 715 (2002).)

1    suffer injuries, if there had not been proper inspection/maintenance; all of which were a
2    substantial factor in causing the injury. (Ex. 13: Stevick Decl. at ¶¶ 7.a-7.d, 8.)  This
3    evidence is sufficient to create a triable issue of material fact as to the cause of the
4    incident and Plaintiff's injuries, thereby making summary judgment improper.

5         Finally, regarding Plaintiff's negligence claim, contrary to Defendant's strained
6    contention, the evidentiary doctrine of *res ipsa loquitur* applies here. (*Jiminez v. Sears,
7    Roebuck & Co.*, 4 Cal.3d 379 (1971).)  It creates a presumption that arises when an
8    accident is of such a nature that it can be said, in light of past experience, that it probably
9    was the result of negligence by someone and that the defendant was probably the party
10   responsible for that negligence.  To rely on the doctrine of *res ipsa loquitor*, the plaintiff
11   must establish: (1) the incident is the type that would not ordinarily occur "in the absence
12   of negligence;" (2) it was caused by something within the defendant's exclusive control,
13   or that was not changed or improperly handled by the plaintiff after leaving the
14   defendant's exclusive control; and (3) the plaintiff did not voluntarily contribute to the
15   incident. (*Irwin v. Pacific Southwest Airlines*, 133 Cal.App.3d 709, 715 (1982).)

16        Here, Plaintiff has presented evidence that the tailgate on the Truck would not
17   have disengaged in the manner it did, causing him to fall and sustain injuries, without
18   negligence on the part of Defendant, either in its failure to inspect and maintain the Truck
19   and discover the problem with the cables/tailgate, or its failure to warn Plaintiff against
20   standing on the tailgate while loading the Truck.  Plaintiff has also presented evidence
21   that the Truck was not "improperly handled nor changed in its condition" after it left
22   Defendant's store.  Finally, Plaintiff has presented evidence that he did not act in a way
23   that contributed to the accident. He was merely unloading items from the Truck in a
24   completely foreseeable manner.  Therefore, Plaintiff has met the elements of *res ipsa
25   loquitor*, and the Court should deny Defendant's motion as to the negligence claims.

26   **C. SUMMARY JUDGMENT AS TO PLAINTIFF'S "STRICT
27        LIABILITY – FAILURE TO WARN" CLAIM IS IMPROPER.**

28        A product which is neither defectively manufactured nor defectively designed is

LAW OFFICES OF NICHOLAS A. SICILIANO
6320 CANOGA AVENUE, SUITE 1400
WOODLAND HILLS, CALIFORNIA 91367
Tel: (818) 887-8895 * Fax: (818) 887-8896

LAW OFFICES OF NICHOLAS A. SICILIANO
6320 CANOGA AVENUE, SUITE 1400
WOODLAND HILLS, CALIFORNIA 91367
Tel: (818) 887-8895 * Fax: (818) 887-8896

*nevertheless defective* "if a reasonably foreseeable use involves a substantial danger not readily recognizable by the ordinary consumer, and the manufacturer fails to provide an adequate warning.  [Citations.]" (6 Witkin, Summary of Calif. Law (10th ed. 2005) Torts, § 1467, p. 899 (emphasis added).  To establish strict liability for failure to warn, the plaintiff must prove the defendant "did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of the manufacture and distribution." (*Chavez v. Glock, Inc.,* 207 Cal.App.4th 1283, 1304 (2012), citing the California Supreme Court in *Anderson v. Owens-Corning Fiberglas Corp.* (1991) 53 Cal.3d 987, 1002–1003.)  Thus, a lessor can be held strictly liable for its failure to warn of a risk, if it knew or should have known of the risk involved. (*Anderson,* 53 Cal.3d at 1000.)

Unlike negligent failure to warn, "[S]trict liability is not concerned with the standard of due care or the reasonableness of a manufacturer's conduct." (*Id.* at 1002.) Instead, a plaintiff need only prove there was no adequate warning. (*Id.* at 1003.)  The reasonableness of a lessor's actions will not preclude liability under a strict liability theory of the failure to warn. (*Id.*)   In such cases, the trier of fact "must decide whether a product flawlessly designed and produced may nevertheless possess such risks to the user without a suitable warning that it becomes 'defective' simply by the absence of a warning." (*Finn v. G.D. Searle & Co.,* 35 Cal.3d 691, 699 (1984).)

Here, Defendant erroneously argues that (1) there were no risks known or knowable in the scientific community, and (2) the instructions and warnings provided were sufficient and adequate. (Motion, p. 14-15.)  However, as discussed above, Plaintiff has presented evidence there were known (and knowable) risks related to the Truck (and specifically the tailgate), and Defendant failed to warn of them by failing to attach the manufacturer's decal warning users to avoid heavy loads on the tailgate.  Defendant also readily admits that its personnel knew that standing on the open tailgate was dangerous

yet failed to provide any warning.[6]   Defendant also has a history of ordering replacement cable assemblies from TAFCO -- placing it on actual notice of the potential failure.

Furthermore, as also discussed above, whether warnings are adequate is ordinarily an *issue of fact* for the factfinder, especially where the evidence as to the warnings provided is in conflict, as it is here. (*Huynh,* 16 Cal.App.4th at 835.)   In *Jackson v. Deft, Inc.*, 223 Cal.App.3d 1305 (1990), the court reversed an order granting summary judgment as to the plaintiffs' failure to warn product liability claim noting, "[r]easonable people might disagree about whether any or all of the warnings on these labels were unambiguous and conspicuous, and whether they provided sufficient information on the extent of risks and symptoms of overexposure to defendants' products." (*Id.* at 1320.)   While "[o]ccasionally the evidence is such that the adequacy of a warning may be decided by the court as a matter of law," the court explained "[i]n most cases, however, the adequacy of a warning is a question of fact for the jury." (*Id.*)

Here, there were no instructions or warnings related to the tailgate (despite having but not using) the manufacturer's warning sticker specifically directing users to not overload the tailgate.   And, as Plaintiff's expert opined, any purported warnings were insufficient. (Ex. 13: Stevick Decl. ¶7.b, 8.)   Hence, there is at least a triable issue of material fact as to whether the warnings given by Defendant were adequate.

## D. THERE IS A GENUINE DISPUTE OF MATERIAL FACT AS TO PLAINTIFF'S IMPLIED WARRANTY CAUSES OF ACTION

For breach of the implied warranty, the plaintiff need only demonstrate that he or she was harmed by the product that he or she purchased from defendant because the product *did not have the quality that a buyer would expect*.   (See CACI 1231.)   "Where the seller at the time of contracting has reason to know any particular purpose for which

---

[6] Scientific knowledge is never required where, as here, there was actual notice to the lessor. (See CACI 1205.)  Further, *Altman v. HO Sports Co.*, 821 F. Supp.2d 1178 (E.D. Cal. 2011), and *Mitus v. Pfizer, Inc.*, 358 F.3d. 659 (9th Cir. 2004), are not applicable as in those cases, unlike there, there was a specific warning on/as to the product that failed. Accordingly, Defendant's contentions miss the mark.

LAW OFFICES OF NICHOLAS A. SICILIANO
6320 CANOGA AVENUE, SUITE 1400
WOODLAND HILLS, CALIFORNIA 91367
Tel: (818) 887-8895 * Fax: (818) 887-8896

1  the goods are required and that the buyer is relying on the seller's skill or judgment to

2  select or furnish suitable goods, there is unless excluded or modified under the next

3  section an implied warranty that the goods shall be fit for such purpose." (See Comm.

4  Code §2315; *Keith v. Buchanan* (1985) 173 Cal.App.3d 13, 25.)

5  Like negligence, the essential inquiry is a question of fact, namely, whether the

6  Defendant made such inspection of their equipment as was necessary to discharge their

7  duty of reasonable care. (*McNeal,* 40 Cal.2d at 742; *Price v. Shell Oil*, 2 Cal.3d 245

8  (1970), citing *Cintrone v. Hertz*, 45 N.J. 434, 451-52 (1965).)

9  Here, Plaintiff's step-sister rented the Truck to move her home furnishings from

10  one place to another, with Plaintiff's help.  Plaintiff expected the Truck, including the

11  tailgate, would be safe, and sturdy enough to hold up during the loading and unloading

12  of his step-sister's belongings.  But the Truck did not have the quality he expected.

13  Instead, the cable(s) holding the tailgate in place failed, causing the tailgate to disengage

14  while Plaintiff was standing on it, causing injuries.  Plaintiff has provided ample

15  evidence that the Truck was not properly inspected, far and above what is necessary to

16  create an issue of fact.  Thus, whether Defendant breached the implied warranties of

17  merchantability and fitness for a particular purpose should be left for the jury to decide.

18  Nevertheless, Defendant argues in its Motion that Plaintiff cannot recover on a

19  warranty theory because the transaction involving the Truck was not a sale of goods or

20  a rental of more than four months, citing statutory provisions contained in the California

21  Uniform Commercial Code and in the Song-Beverly Consumer Warranty Act. (Motion,

22  pp. 18-19.)  However, these statutes do not provide the totality of the law regarding a

23  lessor's duties when renting goods.[7]

24  

25  [7] This is not a Song-Beverly Act., i.e., "lemon law", action. Song-Beverley is a remedial

26  act designed to supplement common law duties and obligations, and allow consumers
   a statutory warranty claim. (*Dagher v. Ford Motor Company*, 238 Cal.App.4th 905, 915

27  (2015).)  If this were a true auto "lease", then Defendant would be forced to comply
   with the Vehicle Leasing Act, Civil Code § 2985.7, et seq., which it certainly did not

28  do here. The truth is, this is not a "lease" at all, it is an equipment rental agreement.

LAW OFFICES OF NICHOLAS A. SICILIANO
6320 CANOGA AVENUE, SUITE 1400
WOODLAND HILLS, CALIFORNIA 91367
Tel: (818) 887-8895 * Fax: (818) 887-8896

LAW OFFICES OF NICHOLAS A. SICILIANO
6320 CANOGA AVENUE, SUITE 1400
WOODLAND HILLS, CALIFORNIA 91367
Tel: (818) 887-8895 * Fax: (818) 887-8896

1   Pursuant to *Civil Code* section 1955, entitled "Obligations of Lessor of Personal
2   Property, unless the parties agree in a written lease that exceeds 20 days (not applicable
3   here), "one who leases personal property must deliver it to the lessee, secure his or her
4   quiet enjoyment thereof against all lawful claimants, put it into a condition fit for the
5   purpose for which he or she leases it, and repair all deteriorations thereof not occasioned
6   by the fault of the lessee and not the natural result of its use. (Civ. Code, § 1955.)

7   Additionally, in *Holmes Packaging Machinery Corp. v. Bingham*, 252 Cal. App.
8   2d 862, (1967), the court, after reviewing the law in California (including the *Tierstein*
9   and *Licht* cases discussed above) held that "the implied warranties which are applicable
10  in bailment contracts are analogous to those applicable in sale transactions . . ." (*Id.* at
11  873 (emphasis added); see also *Morgan v. Stubblefield*, 6 Cal.3d 606, 617 (1972), where
12  the California Supreme Court held, where the renter has reason to know of any particular
13  purpose for which the goods are required and the rentee is relying on the renter's skill or
14  judgment to select or furnish suitable goods, there is an implied warranty that the goods
15  shall be fit for such purpose. (*Id;* see also, *Cintrone*, *supra*, 45 N.J. at 450, implied
16  warranty applies for entire rental period.)

17  Here, the evidence raises triable issues of fact as to what a renter would expect
18  and the obligations of Defendant knowing that renters of its trucks relied upon
19  Defendant's skill and judgment in furnishing trucks for hauling goods. Defendant knew
20  the purpose for the rental and confirmed the Truck was adequate for the stated purpose.
21  Hence, summary judgment must be denied.

22  Notwithstanding, Defendant claims that Plaintiff cannot recover on its warranty
23  claims because he was not in privity with Defendant. (Motion, p. 19.) This is incorrect.
24  In California, there is a "well-recognized exception" to the privity requirement for family
25  members. (See, *Hauter v. Zogarts*, 14 Cal.3d 104 (1975).) In an action brought on behalf
26  of the minor son of the purchaser for injuries suffered while using a golf training device
27  sold by the defendant, the California Supreme Court held that privity in not required
28  where the user is a member of the purchaser's family. (*Id.* at 114.) Here, it is undisputed

17

LAW OFFICES OF NICHOLAS A. SICILIANO
6320 CANOGA AVENUE, SUITE 1400
WOODLAND HILLS, CALIFORNIA 91367
Tel: (818) 887-8895 * Fax: (818) 887-8896

that Plaintiff was the step-sister of Kristina, who rented the Truck. Thus, he satisfies the privity requirement for purposes of the implied warranty of merchantability of the Truck.

As the Truck failed to function in the manner expected, with the cable malfunctioning, causing the tailgate disengage and Plaintiff to fall, Defendant breached the implied warranties related to the Truck. (Ex. 13: Stevick Declaration at ¶¶ 7.d, 8.) At a minimum, triable issues of material fact remain and summary judgment is improper.

### E. THERE IS A GENUINE DISPUTE OF MATERIAL FACT AS TO PLAINTIFF'S BREACH OF EXPRESS WARRANTY CLAIM.

A defendant is liable under a theory of breach of the express warranty where the plaintiff has demonstrated that he or she was harmed by the product because the defendant represented, *either by words or actions*, that the product was safe for its intended use but the product *was not*. (See CACI 1230.) This is precisely the claim here.

Defendant knew of the purpose for the rental as confirmed by the store associate. Defendant has a policy of qualifying its customers to ensure that the product they provide is appropriate for the customers' needs, which policy was followed here. Also, pursuant to its company policy, Home Depot confirmed the Truck was adequate for the stated purpose – to move furnishings.[8] Accordingly, following its own policies, by its words and conduct, an express warranty existed. And, since there is no privity requirement for express warranty claims (*Hauter*, 14 Cal.3d at 114), the instant Motion must be denied.

### F. PLAINTIFF DID NOT WAIVE HIS CLAIMS.

There is "strong and growing distaste in our state and in our nation for exculpatory release provisions releasing a tortfeasor from liability for his or her future negligence or misconduct." (*Ferrell v. Southern Nevada Off-Road Enthusiasts, Ltd.*, 147 Cal.App.3d 309, 314 (1983), citing *Tunkl v. Regents of University of California*, 60

---

[8] The fine print in the Agreement is of no moment as such print is so small it is illegible, even by Defendant's own witness. (Orozco Depo., at pp. 150:22-151:6.) Thus, it is insufficient to act as a waiver. (*Celli v. Sports Car Club, Inc.*, 29 Cal.App.3d 511, 521 (1972), rejecting comprehensive release provisions printed in such small type; see also, *Tunkl v. Regents of University of California*, supra, 60 Cal.2d at 97.)

LAW OFFICES OF NICHOLAS A. SICILIANO
6320 CANOGA AVENUE, SUITE 1400
WOODLAND HILLS, CALIFORNIA 91367
Tel: (818) 887-8895 * Fax: (818) 887-8896

Cal.2d 92 (1963).)  "The law does not look with favor upon attempts to avoid liability or secure exemption for one's own negligence . . ." (*Burnett v. Chimney Sweep, LLC*, 123 Cal.App.4th 1057, 1066 (2004).)  Defendant's contention that Plaintiff waived all claims for personal injuries, pursuant to the Vehicle Delivery Agreement is plain wrong.

*First*, the general rules of contract formation apply to releases/waivers. "Contract formation requires mutual consent, which cannot exist unless the parties 'agree upon the same thing in the same sense.'" (*Bustamante v. Intuit, Inc*., 141 Cal. App. 4th 199, 208 (2006), citing *Civil Code* §§ 1550, 1565, 1580.)  If one party does not sign the contract, the contract is void for a lack of mutual assent and cannot be enforced against him. (*St. Agnes Medical Center v. PacifiCare of California*, 31 Cal.4th 1187, 1200 (2003).)  "[I]t is essential to the validity of a contract, not only that the parties should exist, but that it should be possible to identify them." (*Westlye v. Look Sports, Inc*., 17 Cal.App.4th 1715, 1728 (1993), citing *Civil Code* § 1558, requiring identification of the parties, and rejecting a non-contracting party's attempt to escape liability under a release.)  The party who seeks to impose the release on someone who is not a party to it has the burden of "show[ing] some basis for extending the agreement to them." (*Id.*)

Here, Plaintiff did not sign the release, is not referred to in it, and there is no legal basis for extending the release to a third party. It is undisputed that "Plaintiff was not involved with the rental and was not identified as a user of the Truck." (Motion, p. 2; UMF 5, 6.)  Plaintiff did not sign the Agreement, and thus, did not agree to the terms therein. (Ex. 9: Plaintiff Decl. at ¶3.)  Hence, it does not apply to Plaintiff.

*Second*, strict products liability applies to lessors of a product and liability waivers do not protect against strict liability. (*Westlye*, supra, at 1743; *Olsen v. Breeze, Inc*., 48 Cal.App.4th 608, 620 (1996).)

*Third*, to be effective, a release must: be clear, unambiguous, and explicit in expressing the intent of the subscribing parties; and clearly notify the prospective releasor or indemnitor of the effect of signing the agreement. (*Benedek v. PLC Santa Monica*, 104 Cal.App.4th 1351, 1356 (2002).)  Such agreements are construed "strictly

19

against the defendant" who created it. (*Paralift, Inc. v. Superior Court*, 23 Cal.App.4th 748, 755 (1993); *Ferrell*, 147 Cal.App.3d at 312, the court refused to allow enforcement of a signed release that did not clearly and explicitly set forth to an ordinary person, untrained in the law, that it was the intention to release defendants from all liability.)

Here, the subject Agreement did not clearly and explicitly set forth to an ordinary person that he or she would be releasing Defendant from all liability.  Defendant cites two inapplicable provisions of the "release" which pertain to collisions caused by the driver/renter, and if such an event were to happen, the driver/renter would indemnify Home Depot. (See *Price, supra,* 2 Cal.3d at 257, indemnity clauses such as this are not enforceable.)  Neither of these scenarios is at issue in this case. Nor does the Agreement mention a waiver of claims resulting from Defendant's negligence or misconduct. When strictly construed against Defendant, it is not objectively reasonable to read the purported waiver to mean all claims related to the Truck, regardless of who is involved or how.

*Finally*, "waiver is the intentional relinquishment of a known right after full knowledge of the facts" and depends solely on the intention of the party allegedly waiving his rights. (*Old Republic Ins. Co. v. FSR Brokerage,* 80 Cal.App.4th 666, 678 (2000).)  "The burden is on the party claiming a waiver of right to prove it by clear and convincing evidence that does not leave the matter to speculation.  As a general rule, doubtful cases will be decided against the existence of a waiver." (*Ringler Associates Inc. v. Maryland Casualty Co.,* 80 Cal.App.4th 1165, 1188 (2000).)  Here, summary judgment is improper where there is no evidence that Plaintiff intended to surrender his right to make a personal injury claim against Defendant. (Ex. 9: Plaintiff Decl. at ¶3; and see Defendants' UMFs 1, 2, 5, 6, 45.)

## IV.   **CONCLUSION**

For the forgoing reasons, Defendant's Motion should be denied in its entirety.

DATED: July 9, 2018            LAW OFFICES OF NICHOLAS A. SICILIANO

By:   *Nicholas A. Siciliano*
NICHOLAS A. SICILIANO, ESQ.
Attorneys for Plaintiff

LAW OFFICES OF NICHOLAS A. SICILIANO
6320 CANOGA AVENUE, SUITE 1400
WOODLAND HILLS, CALIFORNIA 91367
Tel: (818) 887-8895 * Fax: (818) 887-8896

# CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2018, I electronically filed the **PLAINTIFF'S OPPOSITION TO DEFENDANT HOME DEPOT U.S.A., INC.'S NOTICE OF AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF** with the Clerk of the Court using the CM/ECF system which will send notification of such filing electronically to registered counsel.


DATED: July 9, 2018          LAW OFFICES OF NICHOLAS A. SICILIANO

*Nicholas A. Siciliano*

By:_____

NICHOLAS A. SICILIANO, ESQ.
Attorneys for Plaintiff

LAW OFFICES OF NICHOLAS A. SICILIANO
6320 CANOGA AVENUE, SUITE 1400
WOODLAND HILLS, CALIFORNIA 91367
Tel: (818) 887-8895 * Fax: (818) 887-8896

PLAINTIFF'S OPPOSITION TO DEFENDANT HOME DEPOT U.S.A., INC.'S NOTICE OF AND
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR PARTIAL
SUMMARY JUDGMENT; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF